CURTIS E. ALLEN, ESQ. SBN 187748
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Ph 650 868 6620; Fax 650 362 1864
Curtis.e.allen.esq@gmail.com
www.curtiseallenesq.com

Attorney for Plaintiff ANDREA DI NAPOLI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA DI NAPOLI,<br><br>                    Plaintiff,<br><br>         v.<br><br>KENSINGTON POLICE PROTECTION AND COMMUNITY SERVICES DISTRICT; RICKEY HULL (IN HIS OFFICIAL CAPACITY AS POLICE CHIEF); AND DOE DEFENDANTS 1 THROUGH 10<br><br>                    Defendants. | CASE NO.<br><br>**PLAINTIFF'S COMPLAINT**<br><br>**CVIIL RIGHTS COMPLAINT**<br><br>**REQUEST FOR INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**PARTIES & VENUE**

1. Plaintiff Andrea Di Napoli ("Ms. Di Napoli") at all times relevant herein is and was a female over the age of 18, employed by Defendant Kensington Police Protection and Community Services District, living and working in Contra Costa County, California.

2. Defendant Kensington Police Protection and Community Services District ("District") is a Community Services District that provides Police Protection, Parks and Recreation, and Waste Management services to the unincorporated area of Kensington, located in Contra Costa County, California.  (The Board of Directors referenced herein is the decision making body of the District.)

-1-

COMPLAINT

3.  Defendant Rickey Hull is an at all times except as mentioned herein has been interim Police Chief of Defendant Kensington Police Protection and Community Services District, and Ms. Di Napoli's direct supervisor.  Mr. Hull is sued in his official capacity.

4.  Pursuant to California Code of Civil Procedure § 747, Plaintiff hereby also sues Doe Defendants 1 through 10.  Plaintiff is ignorant of the name of Doe defendants 1 through ,10, but believe such Defendants also contributed to the legal violations complained of herein and that Doe Defendants 1 through 10 caused Plaintiff economic and non-economic harm.  When said Defendant(s) true name(s) is/are discovered, Plaintiff shall amend the Complaint accordingly.

5.  This Court has original jurisdiction over Plaintiff's federally based legal claims pursuant to 28 USC § 1331 as plaintiff seeks to redress violations of federal civil rights laws.

6.  This Court has supplemental jurisdiction over plaintiff's claims that arise under California law, pursuant to , 28 USC § 1367,  and the exercise of which is proper under the circumstances as the federal and state claims share a common nucleus of operative facts.

## GENERAL ALLEGATIONS

7.  Since approximately April 2008 Ms. Di Napoli has been and is tasked in part with security and keeping track of evidence used in criminal cases and making sure the Kensington Police Protection And Community Services District's ("the District") peace officers are up to date on their required POST training.

8.  Ms. Di Napoli has been and is also responsible for a host of peace officer and non-peace officer related tasks such as running the schedule for the Community Center. At times she fills in for others who are out, in an effort to make sure payroll is administered smoothly and interactions with the public remain seamless.

9.  Ms. Di Napoli's direct supervisor is Defendant Hull, who as Police Chief (either interim, acting or "permanent") controls at least in part, along with the District, whether Ms. Di Napoli remains employed.

10. In early 2018 a CPI (a small increase for the cost of living) increase for Ms. Di Napoli and the District Administrator (female) was budgeted by the District.

11. The District did not actually implement that increase until the two women brought the issue up repeatedly and threatened to pursue formal action.

12. Ms. Di Napoli and the female District Administrator also had to fight for their small increase in 2017.

13. On or about August 9, 2018, the District's Board of Directors (at times "Board" or "BOD") decided to take the first concrete steps in decreasing Ms. Di Napoli's pay by $ 10,000.00 and ultimately eliminating her job.

14. This occurred during a Board of Directors meeting without any prior notice being given to Ms. Di Napoli personally; Ms. Di Napoli found out about the move by way of reviewing the Attachment relating to Item 7a of the Agenda for the Open Meeting.

15. Ms. Di Napoli urged the District not to decrease her salary for a variety of reasons. A decrease in salary makes little fiscal sense given the important work Ms. Di Napoli does as indicated above, as well as the lack of increase in Ms. Di Napoli's salary over the past 10 years and the District's spending in other areas.

16. In the months prior to August, 2018, the Board paid approximately $ 25,000.00 in non-budgeted moneys for a Proposed Administrative Support Reorganization Report by Bob Deis.

17. During the investigation that led to the creation of the Report, Don Turko, a Consultant with Public Management Group, sat with Ms. Di Napoli for approximately an hour to review her job duties and salary.

18. When he discovered that Ms. Di Napoli had not received a raise during the 10 years she worked for the District, he indicated that he would document that Ms. Di Napoli had not received a raise, that her pay should be adjusted to reflect her job duties/titles, and that he would pass that information to Bob Deis.

-3-

COMPLAINT

19. The resulting Report was dubbed "The Bob Deis Report" aka "the Deis Report", which was issued on July 11, 2018. This is what the Report said regarding Ms. Di Napoli's position:

We are recommending that the general administrative support duties currently provided by this position i.e. scheduling use of the Community Center, collecting fees and working with maintenance staff for the District facilities, should be reassigned to other District staff. This position may provide basic reception duties in coordination with the Office Assistant position described below.

We believe the staffing level of this position can be reduced by approximately 20 percent when transferring the general administrative support duties to the new Office Assistant. We were not asked to review the salary for this position.

20. The District also spent $ 75,000.00 in non-budgeted money to examine the contracting out of police services. The resulting report was dubbed "The Matrix Report." Contracting out the service would apparently cost the District anywhere from an estimated $14 – $26 Million in payments to CalPers.

21. On August 9, 2018 the Board voted on whether to hire an Office Assistant and pay that person approximately $ 30,000.00 per year (approximately the same salary Ms. Di Napoli is currently making), assigning her some of Ms. Di Napoli's non-peace officer related tasks.

22. During the August 9, 2018 open meeting the Board was reminded by an attorney representing Ms. Di Napoli's coworker whose role will be similarly reduced that ordinances need to be passed in order for the reorganization and/or changes to take effect.

COMPLAINT

23. But the District ignored these procedural and substantive rules. Apparently in December 2018 the District has been speaking with an outside staffing agency to hire a Finance Business Manager.

24. Steps were and are taking place to fulfill the reorganization plans. These plans include the retaliatory elimination of Ms. Di Napoli's position.

25. In the past, Ms. Di Napoli has expressed to the Board concerns of the type that provide her legal protection from retaliation.

26. Especially in light of the District's apparent spending on other matters as touched on above, a reduction in her salary and ultimate elimination of her job cannot be seen as anything other than retaliation for her speaking out on issues regarding workplace safety, gender discrimination and hostile work environment based on gender.

27. Ms. Di Napoli's efforts to speak out are detailed below.

28. In November 2016 Ms. Di Napoli' wrote a letter of concern to the District's Board of Directors ("BOD") regarded then Mst. Sgt. Rickey Hull. She raised the concerns regarding the possibility that he was to be named IGM/COP.

29. The letter addressed then Mst. Sgt. Hull's hostile treatment of Ms. Di Napoli, as well as other concerns. Among those were: 1) his mistreatment of members of the public, detailing his mistreatment of a female member of the public; 2) his failure to hold himself to the same standards he holds those officers in his command; 3) his failure to show up on time or at all for required P.O.S.T. trainings (which he later made up, as required); 4) his failure to understand proper evidence purging procedure; 5) his failure to follow proper procedure when securing two loaded fire arms into evidence and a separate incident in which he kept at his desk a machete that was supposed to be secured as evidence. She also expressed concern for her physical safety and noted other staff members felt concerned for their safety as well.

COMPLAINT

30. Board President Len Welsh personally accepted the letter and treated it as a formal complaint to be investigated.

31. At a December 19, 2016 meeting between Mr. Welsh, Mst. Sgt. Hull and BOD Attorney Amara Morrison, Mst. Sgt. Hull indicated he would use an outside police agency IA investigator to look into Ms. Di Napoli's allegation along with two other letters of concern from residents.

32. Mr. Welsh told Ms. Di Napoli that someone would contact her by January 2017 regarding her letter.

33. In the meantime, on December 17, 2016, the BOD promoted Mst. Sgt. Hull to Interim Chief.

34. Hull's attitude and conduct was and is a continuation of the attitude and conduct causing Ms. Di Napoli to submit her November 2016 letter in the first place. The tension in the office had been and continues to be very thick with his hostility toward Ms. Di Napoli and others, and IGM/COP Hull has exhibited a wide variety of unpredictable moods and mood swings. (Letters from residents who also voiced their concerns about Mst. Sgt. Hull becoming IGM/COP were included in one of the BOD agenda packets.)

35. Not until February 24, 2017, in response to an email sent by Ms. Di Napoli to Mr. Welsh inquiring about the status of the investigation, did Ms. Di Napoli hear from the BOD's attorney (Ms. Morrison). When Ms. Di Napoli spoke with Ms. Morrison, Ms. Morrison seemed concerned only about the machete which was an evidence item Mst. Sgt. Hull had kept at his desk rather than properly package and storing. Ms. Morrison expressed no concern about Mst. Sgt. Hull's unpredictable and aggressive behavior, or that Ms. Di Napoli and others felt unsafe because of his unpredictable behavior. Of note, Mst. Sgt. Hull was and is armed. A week or so after this conversation the firm Ms. Morrison works for terminated its relationship with the District.

36. In May 2017 Ms. Di Napoli's attorney wrote the District to speak out regarding gender and workplace safety concerns. The letter highlighted the following.

37. In fiscal year 2016/2017 Ms. Di Napoli and District Administrator Lynn Wolter each received a CPI increase. In March 2017 IGM/COP Hull decided that Ms. Di Napoli and Ms. Wolter would receive the CPI increase again for fiscal year 2017/2018. This latest increase was formally budgeted (account #508) in mid-March 2017.

38. But on or about April 20, 2017 the budget was changed by IGM/COP Hull and Ms. Di Napoli and Ms. Wolter's CPI increase for the upcoming year was rescinded.

39. Notably, IGM/COP Hull's revocation of the CPI increase came within five months of Ms. Di Napoli submitting a November 2016 letter to the BOD raising concerns regarding workplace safety that directly involved IGM/COP Hull.

40. The revocation came approximately three days after Ms. Wolter submitted a hostile work environment complaint against IGM/COP Hull.

41. IGM/COP Hull knew and knows about the issues each woman has raised, and given the timing, clearly the revocation was the product of illegal motivation. (See, e.g., California Fair Employment & Housing Com. v. Gemini Aluminum Corp. (2004) 122 Cal.App.4th 1004, Morgan v. Regents of University of California (2000) 88 Cal.App.4th 52, 69 (a causal link may be established with evidence demonstrating that the employer was aware of the protected activity and the adverse action followed within a relatively short time).)

42. However, it is worth noting that IGM/COP Hull subsequently informed Ms. Di Napoli and Ms. Wolter that he has decided the two will no longer be able to "make up" vacation or sick time they have taken. It has long been the policy that when either woman is out on vacation or on sick time, that woman may work extra hours to deal with the backlog of work created while away. But ICM/COP Hull has apparently seen fit to unilaterally do away with this policy. Coming so close on the heels of the women's complaints, this is yet another source of discriminatory and retaliatory damage they have suffered.

43. The District's retaliation is ongoing and continues to the present, and its actions perpetuate a continuing and ongoing hostile work environment based on gender and in reaction to Ms. Di Napoli's speaking out about workplace safety concerns.

44. For example, The August 9, 2018 minutes to the open BOD meeting include a comment made by the District's legal counsel:

The retaliation claim has been brought up before several times, not merely in connection with this matter. These structural changes have been under discussion now for about a year, well before the March 25th incident that Mr. Wolter referred to. I don't see any facts that provide a basis for retaliation here, and Director Deppe has no particular reason to retaliate. He has not himself faced any ill consequences for the admitted mistakes of what happened.

45. As indicated above, Ms. Di Napoli (and her female coworker) filed their written internal complaints a year earlier (in 2017) against Hull. The General Counsel stated that the reorganization has been under discussion for a year. This timing obviously reflects a retaliatory motive. The minutes also contain a statement by a BOD Member regarding evidence being taken from the evidence room, thus clearly and incorrectly suggesting that Ms. Di Napoli was taking such evidence as she is the only one with access to the room.

46. As of the date of this Complaint, it appears that no further investigation has taken place into the concerns raised in Ms. Di Napoli's past letters and conversations with her superiors. It does not appear that any investigation by an outside agency has occurred.

47. Instead, IGM/COP Hull's hostile and mercurial behavior in general continues. The District has joined in IGM/COP Hull's retaliation by way of its unlawful and irresponsible 2018 efforts to decrease Ms. Di Napoli's salary and remove her from her position.

-8-

COMPLAINT

48. In Decmeber 2018, Ms. Di Napoli filed a Tort Claim detailing a host of the above incidents and noticing the non-DFEH state causes of action brought herein.

49. In January 2019 in an ongoing effort at retaliation, discrimination and hostile work environment, the District spuriously rejected Ms. Di Napoli's Tort Claim as not meeting proper requirements when in fact it did.

50. Thereafter Ms. Di Napoli responded to the District's retaliation by pointing out in writing that the requirements were met by the December 2018 filing, and by adding additional information that went well beyond the Tort Claim requirements.

51. On or about August 6, 2019, the District emailed and mailed a Notice rejecting the Tort Claim.

52. In June 2019 and in further retaliation against Ms. Di Napoli, rather than ensure that the new budget provided for Ms. Di Napoli's position, the District cut Ms. Di Napoli's job duties, and conspired to eliminate her position in four months (approximately November 2019) through a pretextual reorganization plan that calls for a new hire for effectively the same position at a greater cost to the District. Notably, Ms. Di Napoli's "position" was not budgeted for beyond October 2019.

53. The Defendants' acts and omissions set forth above reflect and created a policy, custom and practice of: a) discriminating against and creating a hostile work environment for women, including but not limited to Ms. Di Napoli, b) discriminating against and creating a hostile work environment for those, including but not limited to Ms. Di Napoli who exercise their free speech rights, and c) retaliating against women who engage in activities protected by anti-discrimination and related laws, as well as free speech laws.

54. On August 7, 2019 Ms. Di Napoli filed a DFEH Charge requesting an immediate Notice of Right to Sue, and received the same.

COMPLAINT

## DAMAGES

55. As a result of Defendants' conduct, Ms. Di Napoli sustained and will continue to sustain lost wages and benefits – both past and future - in an amount to be determined according to proof.

56. As further proximate result of Defendants' actions as alleged herein, Ms. Di Napoli suffered emotional distress damages, was and is humiliated, hurt and injured in her health, strength and activity, and suffered and continues to suffer loss of reputation, good will and standing in the community, scorn and humiliation, embarrassment, mental and physical anguish and suffering, depression, anxiety, loss of enjoyment of life, and general loss of self-esteem and well-being, all to Ms. Di Napoli's damage in an amount to be shown according to proof.

57. Defendants' actions as set forth herein were willful, wanton, malicious and oppressive in that each Defendant and its agents knew or should have known that their conduct was unreasonable, illegal, and in violation of Ms. Di Napoli's State Statutory rights and well-being.

58. Furthermore, each Defendant's actions as set forth herein were carried out in willful and conscious disregard for Ms. Di Napoli's State Statutory rights and well-being, entitling Ms. Di Napoli to punitive damages in an amount appropriate to punish or make an example of the individual Defendants in this action.

### FIRST CAUSE OF ACTION

### 42 USC 1983

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

### AGAINST ALL DEFENDANTS

59. Ms. Di Napoli realleges and incorporates by reference each Paragraph above as if fully set forth herein.

60. This claim is brought pursuant to 42 U.S.C. 1983 (Section 1983), as well as underlying statutes including the First and Fourteenth Amendments to the U.S. Constitution, and Title VII (42 USC 2000e-5 et seq.) against all Defendants.

61. At all times referenced herein, Ms. Di Napoli was entitled to the protections set forth in Section 1983, including the right to be free from deprivation of civil rights under color of law.

-10-

COMPLAINT

62. At all times referenced herein, as a government or quasi-government entity or agent, Defendants were bound by Section 1983's directive not to deprive others of their federal civil rights embodied in the First and Fourteenth Amendments to the U.S. Constitution, and Title VII (42 USC 2000e-5 et seq.)

63. In violation of the First, Fourth and Fourteenth Amendments to the U.S. Constitution, through their acts and omissions as set forth above, Defendants engaged in a policy and procedure that denied Ms. Di Napoli her substantive and procedural due process rights, as well as her rights to free speech on matters of public importance, as well as her freedom to associate with others (such as the co-worker with whom she complained) regarding important issues affecting the public.

64. In violation of Title VII, under color of law the Defendants engaged in a pattern and practice of discrimination, ongoing continuing creation of a hostile work environment based on gender, and retaliated against Ms. Di Napoli for raising protected concerns regarding gender.

65. As a proximate result of Defendants' violation of FEHA as set forth herein, Ms. Di Napoli suffered damages as more fully set forth above.

66. WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

## SECOND CAUSE OF ACTION

## DISCIRMINATION/RETALIATION CAL. LABOR CODE 6301 et seq.

## AGAINST ALL DEFENDANTS

67. Ms. Di Napoli realleges and incorporates by reference each paragraph above as if fully set forth herein.

68. Plaintiff was employed by the Defendants.

69. The District received numerous complaints regarding safety from Ms. Di Napoli.

70. Ms. Di Napoli's complaints involved protected workplace safety complaints under Labor Code Section 6301, et seq., as they related to her safety concerns regarding an armed peace officer who expressed a mercurial attitude toward women in particular, including Ms. Di Napoli.

71. Plaintiff was subjected to adverse actions affecting the conditions of her employment in

-11-

COMPLAINT

discrimination and retaliation for reporting safety while still employed by defendant.

72. For example, Ms. Di Napoli's job duties were cut and she was informed of a pending intended terminated from employment in retaliation for the aforementioned complaints.

73. WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

### THIRD CAUSE OF ACTION

### CAL. LABOR CODE 1102.5

### AGAINST ALL DEFENDANTS

74. Ms. Di Napoli realleges and incorporates by reference each paragraph above as if fully set forth herein.

75. Plaintiff was employed by the Defendants.

76. The District received numerous complaints regarding safety from Ms. Di Napoli.

77. Ms. Di Napoli's complaints involved protected workplace safety complaints, as they related to her safety concerns regarding an armed peace officer who expressed a mercurial attitude toward women in particular, including Ms. Di Napoli.

78. Ms. Di Napoli also made numerous complaints to the District regarding gender discrimination and a hostile work environment created by Rickey Hull.

79. As set forth above, Plaintiff was subjected to adverse actions affecting the conditions of her employment in retaliation for reporting safety violations and gender discrimination and hostile work environment while still employed by defendant.

80. Ms. Di Napoli suffered economic and non-economic damages (as set forth above) as a result of the Defendants' adverse actions.

81. WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

### FOURTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF A FUNDAMENTAL PUBLIC POLICY

### AGAINST ALL DEFENDANTS

82. Ms. Di Napoli realleges and incorporates by reference each paragraph above as if fully set forth herein.

83. Plaintiff was employed by the Defendants.

84. Retaliation for complaining of gender rights ground in FEHA and for

-12-

COMPLAINT

complaining of workplace safety violates fundamental public policies in California. (See, e.g., Franklin v. Monadnock Co., 151 Cal.App.4th 252 (2007) (retaliation for raising workplace safety concerns violates a fundamental public policy).)

85. The District received numerous complaints regarding safety from Ms. Di Napoli.

86. Ms. Di Napoli's complaints involved protected workplace safety complaints, as they related to her safety concerns regarding an armed peace officer who expressed a mercurial attitude toward women in particular, including Ms. Di Napoli.

87. Ms. Di Napoli also made numerous complaints to the District regarding gender discrimination and a hostile work environment created by Rickey Hull, as well as complaints she was retaliated against by the District for making such underlying complaints.

88. As set forth above, Plaintiff was subjected to adverse actions affecting the conditions of her employment in retaliation for reporting safety violations and gender discrimination and hostile work environment while still employed by defendant.

89. Ms. Di Napoli suffered economic and non-economic damages (as set forth above) as a result of the Defendants' adverse actions.

90. WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

## FIFTH CAUSE OF ACTION
## FEHA – DISCRIMINATION
## AGAINST ALL ENTITY AND DOE DEFENDANTS

91. Ms. Di Napoli realleges and incorporates by reference each Paragraph above as if fully set forth herein.

92. This claim is brought pursuant to the California Fair Employment and Housing Act, Government Code 12940 et seq. (FEHA) against all Defendants.

93. At all times referenced herein, Ms. Di Napoli was entitled to the protections set forth in FEHA, including the right to be free from discrimination and a hostile work environment based on gender, and free from retaliation for complaining of discrimination and/or a hostile work environment based on gender.

94. At all times referenced herein, Defendants were bound to follow the law as set forth in

-13-

COMPLAINT

FEHA, and not discriminate or create a hostile work environment based on gender, and not to retaliate against those who complain about a hostile work environment or discrimination based on gender.

95. In violation of FEHA, through their actions as set forth herein, Defendants engaged in discrimination and created a hostile work environment for Ms. Di Napoli based on gender.

96. In violation of FEHA, through their actions as set forth herein, Defendants engaged in retaliation against Ms. Di Napoli because of her complaints regarding discrimination and hostile work environment based on gender.

97. The law protects individuals from employment discrimination (including a hostile work environment) based on gender, from retaliation, and from "associational" discrimination and retaliation. (California Government Code § 12940 generally.) In an associational discrimination/retaliation case, the plaintiff employee must show he or she was associated with or advocated for a member of a protected class. (See Thompson v. City of Monrovia (2010) 186 Cal.App.4th 860, 876-877; Thompson v. North American Stainless LP, 131 S.Ct. 863 (2011).) Ms. Di Napoli is being punished based on her gender and because of her association with and support of Ms. Walter's complaints.

98. As a proximate result of Defendants' violation of FEHA as set forth herein, Ms. Di Napoli suffered damages as more fully set forth above.

99. WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

**SIXTH CAUSE OF ACTION**

**FEHA – HOSTILE WORK ENVIRONMENT**

**AGAINST ALL ENTITY AND DOE DEFENDANTS**

100.    Ms. Di Napoli realleges and incorporates by reference each Paragraph above as if fully set forth herein.

101.    This claim is brought pursuant to the California Fair Employment and Housing Act, Government Code 12940 et seq. (FEHA) against all Defendants.

102.    At all times referenced herein, Ms. Di Napoli was entitled to the protections set

-14-

COMPLAINT

forth in FEHA, including the right to be free from discrimination and a hostile work environment based on gender, and free from retaliation for complaining of discrimination and/or a hostile work environment based on gender.

103.    At all times referenced herein, Defendants were bound to follow the law as set forth in FEHA, and not discriminate or create a hostile work environment based on gender, and not to retaliate against those who complain about a hostile work environment or discrimination based on gender.

104.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in discrimination and created a hostile work environment for Ms. Di Napoli based on gender.

105.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in retaliation against Ms. Di Napoli because of her complaints regarding discrimination and hostile work environment based on gender.

106.    The law protects individuals from employment discrimination (including a hostile work environment) based on gender, from retaliation, and from "associational" discrimination and retaliation. (California Government Code § 12940 generally.) In an associational discrimination/retaliation case, the plaintiff employee must show he or she was associated with or advocated for a member of a protected class. (See Thompson v. City of Monrovia (2010) 186 Cal.App.4th 860, 876-877; Thompson v. North American Stainless LP, 131 S.Ct. 863 (2011).) Ms. Di Napoli is being punished based on her gender and because of her association with and support of Ms. Walter's complaints.

107.    As a proximate result of Defendants' violation of FEHA as set forth herein, Ms. Di Napoli suffered damages as more fully set forth above.

108.    WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

**SEVENTH CAUSE OF ACTION**

**FEHA – RETALIATION**

**AGAINST ALL DEFENDANTS**

109.    Ms. Di Napoli realleges and incorporates by reference each Paragraph above as

-15-

COMPLAINT

if fully set forth herein.

110.    This claim is brought pursuant to the California Fair Employment and Housing Act, Government Code 12940 et seq. (FEHA) against all Defendants.

111.    At all times referenced herein, Ms. Di Napoli was entitled to the protections set forth in FEHA, including the right to be free from discrimination and a hostile work environment based on gender, and free from retaliation for complaining of discrimination and/or a hostile work environment based on gender.

112.    At all times referenced herein, Defendants were bound to follow the law as set forth in FEHA, and not discriminate or create a hostile work environment based on gender, and not to retaliate against those who complain about a hostile work environment or discrimination based on gender.

113.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in discrimination and created a hostile work environment for Ms. Di Napoli based on gender.

114.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in retaliation against Ms. Di Napoli because of her complaints regarding discrimination and hostile work environment based on gender.

115.    The law protects individuals from employment discrimination (including a hostile work environment) based on gender, from retaliation, and from "associational" discrimination and retaliation. (California Government Code § 12940 generally.)  In  an  associational discrimination/retaliation case, the plaintiff employee must show he or she was associated with or advocated for a member of a protected class. (See Thompson v. City of Monrovia (2010) 186 Cal.App.4th 860, 876-877; Thompson v. North American Stainless  LP,  131  S.Ct. 863 (2011).) Ms. Di Napoli is being punished based on her gender and because of her association with and support of Ms. Walter's complaints.

116.    As a proximate result of Defendants' violation of FEHA as set forth herein, Ms. Di Napoli suffered damages as more fully set forth above.

117.    WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

-16-

## EIGHTH CAUSE OF ACTION
## FEHA – ASSOCIATIONAL DISCRIMINATION
## AGAINST ALL DEFENDANTS

118.    Ms. Di Napoli realleges and incorporates by reference each Paragraph above as if fully set forth herein.

119.    This claim is brought pursuant to the California Fair Employment and Housing Act, Government Code 12940 et seq. (FEHA) against all Defendants.

120.    At all times referenced herein, Ms. Di Napoli was entitled to the protections set forth in FEHA, including the right to be free from discrimination and a hostile work environment based on gender, and free from retaliation for complaining of discrimination and/or a hostile work environment based on gender.

121.    At all times referenced herein, Defendants were bound to follow the law as set forth in FEHA, and not discriminate or create a hostile work environment based on gender, and not to retaliate against those who complain about a hostile work environment or discrimination based on gender.

122.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in discrimination and created a hostile work environment for Ms. Di Napoli based on gender.

123.    In violation of FEHA, through their actions as set forth herein, Defendants engaged in retaliation against Ms. Di Napoli because of her complaints regarding discrimination and hostile work environment based on gender.

124.    The law protects individuals from employment discrimination (including a hostile work environment) based on gender, from retaliation, and from "associational" discrimination and retaliation. (California Government Code § 12940 generally.)  In an associational discrimination/retaliation case, the plaintiff employee must show he or she was associated with or advocated for a member of a protected class. (See Thompson v. City of Monrovia (2010) 186 Cal.App.4th 860, 876-877; Thompson v. North American Stainless LP, 131 S.Ct. 863 (2011).) Ms. Di Napoli is being punished based on her gender and because of her association with and support of Ms. Walter's complaints.

-17-

COMPLAINT

125.     As a proximate result of Defendants' violation of FEHA as set forth herein, Ms. Di Napoli suffered damages as more fully set forth above.

126.     WHEREFORE, Ms. Di Napoli requests relief as hereinafter set forth herein.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Ms. Di Napoli requests judgment against all Defendants, and each of them, as follows:

1.     For general damages, including, without limitation, for mental and emotional distress according to proof;

2.     For compensatory and related damages due to the economic loss including but not limited to lost past and future wages and benefits, loss of retirement monies according to proof;

3.     For all appropriate declaratory and injunctive relief according to proof, including but not limited to:  a) reinstatement of any and all of Ms. Di Napoli's job duties heretofore taken away; b) a directive that Ms. Di Napoli cannot be terminated from her current job title and position to the extent she remains in that position; c) reinstatement of Ms. Di Napoli to her full title, job duties and pay to the extent Defendants further take away her job duties and/or terminate her employment; and d) implementation of an order and/or consent decree requiring independent outside monitoring of employment complaints, investigations, and decisions relating to gender discrimination within the District.

4.     For punitive damages against qualifying Defendants according to proof;

5.     For an award of interest, including prejudgment and post judgment interest, at the legal rate;

6.     For an award of attorneys' fees;

7.     For costs of suit incurred;

8.     For such other and further relief as the Court deems appropriate.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a jury trial.          CURTIS E. ALLEN, ESQ.

Dated August  7, 2019          __//s_____Curtis E. Allen_____
                                                Attorney for Plaintiff

-18-

COMPLAINT